## MONROE & TARDY v. BRADY.

1. When an appeal is taken, in an admiralty suit, from the judgment of a justice of the peace, rendered in the city of Mobile, it is no valid objection in the Circuit Court, that the justice was elected for a country beat, and therefore, under the statute disqualified to act in the city.

2. Objections to the sufficiency of a libel in an admiralty suit should be made in the Court below, and are too late when taken in the appellate Court.

3. A justice of the peace has jurisdiction under the acts of 1824 and 1841, in libel suits, by material men, &c. against a coasting steamboat, when the sum claimed is not more than fifty dollars.

4. This jurisdiction is not taken away by the circumstance, that the steamboat is employed in conveying the mail of the United States.

5. When there are several suits, by material men, laborers, &c. against a steamboat, commenced before a justice of the peace and removed into the Circuit Court by appeal, it is not an error which can be revised here, for that Court to refuse to consolidate the causes; although the consolidation would have been properly ordered by the Circuit Court.

6. The omission to render a judgment of condemnation against a steamboat, when an appeal is taken by one on behalf of the owners, is not an error of which the parties to the appeal bond will be permitted to complain, as they cannot be prejudiced by it. The omission in such a case is clerical, and might be corrected on motion if necessary.

Writ of error to the Circuit Court of Mobile.

On the 18th of April, 1842, the defendant in error ex-
hibited his libel in nature of a proceeding in admiralty, before
a justice of the peace of Mobile, praying that process might
issue according to the statute of the 19th of December, 1841,
againt the steamboat Caroline, her tackle, apparel and furni-
ture, and that all persons having, or pretending to have any
right, title, or interest to the same, may be summoned, &c.
The ground of complaint is thus pronounced, viz : " That the
said steamboat is now navigating the waters of this State and
within the port of Mobile ; that at the instance of the master
of the said steamboat and his agents, and during the time the
said steamboat was navigating the waters of this State, the li-
bellant was employed to repair the boiler of said boat at the
rate of $3 50-100 per day, and to be found in board ; and
that he so worked seven days receiving only five dollars in
part payment. That the particulars of said steamboat are
more fully shown by the account filed with this libel, amount-
ing in the whole to nineteen dollars and fifty cents ; and
which is now justly due to him this libellant."

The justice of the peace issued a warrant of attachment ac-
cording to the prayer of the libel, returnable on the 28th day
of April, 1842 ; on the day on which it issued it was placed in
the hands of a constable who returned that he had executed it
by the seizure of the Caroline, and that a bond had been giv-
en. A judgment was rendered by the justice in favor of the
libellant for the sum claimed by him, and condemning the
boat, her apparel, &c., for the satisfaction of the same. Where-
upon Hugh Monroe, with B. Tardy as his surety entered into
bond for the prosecution of an appeal to the Circuit Court.

The cause was tried at the first term after it reached the ap-
pellate Court. Previous to the trial the appellant excepted to
the ruling of the Court. It appears from the bill of excep-
tions that the libellant proved his account as alledged in his
libel ; thereupon the appellant being duly admitted as claimant
of the Caroline, moved the Court by his Proctor to dismiss
the libel, for the following reasons : 1. Because, the jus-
tice of the peace who issued the same, was elected and qual-
ified as such for a beat without the corporate limits of the city

of Mobile, and that the issuing of process in this cause as well as its adjudication, was in the city of Mobile. 2. Because, the justice could not lawfully take cognizance of the case, inasmuch as there were five other claims for work and labor done on the boiler of the Caroline, at the same time the work was done for which this suit was brought. On all of which separate libels were issued by the justice at the same time—the aggregate amount of which is $128 37-100. Both of which reasons were sustained by proof and overruled by the Court.

The claimants then moved the Court to consolidate the six cases of which this is one, it being shown in addition to the above facts, that they were all before the Circuit Court by appeal. This motion was also overruled.

It was further shown by the claimants that the Caroline was, at the time she was libelled, regularly licensed for the coasting trade, and employed as United States mail boat between the cities of Mobile and New Orleans, and that the work done by libellants was to enable her to proceed to sea, with safety: that the Caroline did not then, nor never had navigated the waters of this State, as charged in the bill. Thereupon the claimants moved the Court to dismiss the bill, which motion was overruled.

G. N. Stewart, for the plaintiff in error made the following points:

1. That the justice of the peace before whom the libel was exhibited, had no jurisdiction of the cause at the place where he exercised it. '[Aik. Dig. 299, Sec. 2; 300 § 5, 625, 631–2; Meek Sup. 114.]

2. The libel does not show that there was a lien upon the boat; because it does not alledge that the work was done after the first day of July next preceding the commencement of the suit. [Clay's Dig. 139, § 2, 140.]

3. The statute extends the jurisdiction of justices of the peace in cases like the present, where the vessel proceeded against, navigates the internal waters of the State. [Clay's Dig. 139.] The act of 1824 applies to ships, &c. navigating the ocean, &c., and in such cases the lien continues only up to the time of its sailing next after the lien attaches. [Clay's

Dig. 537–8.] The proof shows that the vessel was engaged in the coasting trade, (11 Peter's Rep. 175,) and actually carrying the United States mail.

4. Six cases should have been embraced by one bill, and the motion to consolidate should have been granted by the Circuit Court.

5. The Court rendered judgment without sufficient proof of the existence of the lien and the liability of the boat, or of the indebtedness of its owner or master; and this, although there was neither a default or a verdict.

6. The judgment of the Circuit Court was not *in rem*, as was that of the justice, but it was for a sum of money.

E. S. DARGAN, for the defendant.

GOLDTHWAITE, J.—1. The objection to the proceedings, that the justice determined the case in the city of Mobile, when he was elected for a beat without the corporate limits, is in effect asserting that the trial was had before a person who was entirely unauthorized to act; conceding to this objection its most imposing aspect, we do not think this question can be raised in this way. If the justice was unauthorized to act in the premises he was a trespasser, and as such is liable to the party for his illegal act; but by the appeal the judicial character of the justice is admitted, inasmuch as it establishes a legal connection between him and the appellate Court. If he is not a justice of the peace it is clear that no appeal will lie.

2. The objections to the sufficiency of the libel came too late in an appellate Court. [Witherspoon v. Wallis, 2 Ala. Rep. 667.]

3. But it is contended, the proof shown by the bill of exceptions establishes that, *the plaintiff* has no right to pursue this boat, inasmuch as it is a coasting vessel, and in the employ of the United States by carrying the mail. The act of 1836, (Clay's Dig. 139, § 22,) is much more general in terms than that of 1824, (Ib. 527, § 5, 6, 7,) and gives a lien to be enforced by libel, to all persons who shall furnish materials, laborers, or slaves, for the use of any steamboat or other water craft within the State of Alabama. And the act of 1841, (Ib. 340, § 26) expressly gives the same jurisdiction to

justices of the peace to the amount of 50 dollars. It is doubt-less true, that on account of this boat being a coasting vessel, the admiralty Courts of the United States may have concur-rent jurisdiction, but we are not certain that this necessarily ousts the jurisdiction thus expressly given to our own Courts.

4. Nor is the circumstance, that this boat was employed in carrying the mail of the United States, one from which its owners can claim exemption from the ordinary mode of pro-ceding to which all other persons are subjected.

5. The omission to consolidate the several causes is not an error which is susceptible of revision here, though doubtless the consolidation ought to have been made by the Circuit Court, as it would at least have saved much expense to the parties.

6. We cannot infer that the proof was insufficient to estab-lish the lein, or show the liability of the boat. If it was as is supposed, the party should have shown it by the proper ex-ceptions.

7. The remaining assignment of error questions the legal sufficiency of the judgment, because no condemnation was en-tered against the boat, and, instead, a judgment *in rem* is rendered against the parties to the appeal bond.

It certainly is true, that this judgment is irregular, and should have been for the condemnation of the boat, inasmuch as the boat was not discharged from the lien, by the claimant, enter-ing into the ordinary stipulation provided for by the act.— [Clay's Digest, 139, § 22.] But it appears that Monroe took the appeal in behalf of the owners of the boat and gave bond, with Tardy, conditioned to prosecute the appeal to effect, and to abide by and perform the judgment of the appellate Court in the premises. This is substantially the form of the condi-tion required by the statute, (Clay's Digest, 314, § 9,) and would warrant the judgment in ordinary cases against all the parties to it. Here, 'from the nature of the proceedings, there is no principal against whom to render a judgment, and as the parties by whom the bond is given are at once liable to have judgment rendered against them, no injury results from the omission to render a formal judgment of condemnation. It might be important to the plaintiffs to have execution against the boat, if the sureties of the bond are unable to pay, but in

no way does the omission affect the persons who now complain of it. The bill of exceptions and other part of the proceedings sufficiently show that judgment was given for the plaintiff, and therefore the clerical omission could be corrected if necessary on motion.

Judgment affirmed.